UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MICHAEL S. WALKER,**

                      **Plaintiff,**

  vs.                                                   5:23-CV-29
                                                         (MAD/TWD)

**COMMUNICATIONS SERVICES FOR THE**
**DEAF, CAPTEL, SPRINT, ETC.,**

                      **Defendants.**
_____

APPEARANCES:                                        OF COUNSEL:

**MICHAEL S. WALKER**
4975 Surrey Lane
Liverpool, New York 13088
*Pro se* Plaintiff

**LOCKE LORD LLP**                            **EMILY L. HOWARD, ESQ.**
600 Travis St. Suite 2800
Houston, Texas 77002
Attorneys for Defendants

**JNF LAW PC**                                          **JOSEPH N. FROEHLICH, ESQ.**
307 Hogans Valley Way - 20th Floor
Cary, North Carolina 27513
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     On January 9, 2023, Defendant "Communication Services for the Deaf, Captel, Sprint, etc." ("Defendant"), removed this action to federal court by filing a notice of removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446. *See* Dkt. No. 1. Plaintiff Michael S. Walker, *pro se*, initially brought suit in the Supreme Court of the State of New York, County of Onondaga. *See* Dkt. No. 2. Currently pending before the Court is Defendant's motion to dismiss the complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. No. 13.  Plaintiff opposes the motion.  *See* Dkt. No. 17.  For the reasons and authorities set forth below, Defendant's motion is denied.

## II. BACKGROUND

According to the complaint, Plaintiff "began working for [Defendant] on or around December 16, 2016."  Dkt. No. 2 at 6.  Plaintiff's "most recent job title was captioning assistant." *Id.*  Beginning in or around December 2021, Plaintiff completed "100% of [his] work duties remotely."  *Id.*  Prior to working remotely, Plaintiff informed Defendant that he had religious objections to wearing a mask.  *See id.*  Defendant accommodated Plaintiff's religious objections. *See id.*  Additionally, Defendant accommodated Plaintiff's disability by allowing him to "take breaks toward the end of [his] shift and to allow [Plaintiff] to sit/stand for a disability."  *Id.*

In or around July 2022, Defendant contacted Plaintiff and told him that he needed "to contact [his] doctor and complete a new form evidencing [Plaintiff's] need for a reasonable accommodation[.]"  Dkt. No. 2 at 6.  Plaintiff "attempted to obtain a doctor who could fill out the form, but doctors refused to see [Plaintiff]" because he would not wear a mask.  *Id.*  Plaintiff informed Defendant that he was unable to renew the documents because of his "religious objections to wearing a mask."  *Id.*  Thereafter, Defendant "continued to harass [Plaintiff] and refused to accommodate [his] religious beliefs."  *Id.*

More specifically, Plaintiff practices "Judeo-Christian beliefs."  Dkt. No. 2 at 4.  At some point after transitioning to remote work, Plaintiff provided Defendant a letter, again informing Defendant about his religious beliefs.  *See id.*  Plaintiff alleges that Defendant knew about his religious beliefs "the entire time [he] was employed."  *Id.* at 3.  Plaintiff alleges that he informed Defendant that he is "Lucifer and [is] here to practice [his] Religious Beliefs in accordance with

2

Micah 7, etc." *Id.*

In or around late July 2022, Defendant terminated Plaintiff's employment. *See* Dkt. No. 2 at 6. Defendant communicated to Plaintiff that "they feared for their safety because [Plaintiff] informed them of [his] religious beliefs."[1] *Id.* Plaintiff filed a charge with the Equal Employment Opportunity Commission on or about November 8, 2022. *See id.* Through this action, Plaintiff seeks "Monetary Compensation in the amount of $100,000.00 plus the cost of any and all court fees, filing fees, process server charges, etc." *Id.* at 5. Plaintiff also seeks reinstatement "with all seniority for Paid Time Off (PTO), etc." and other alleged benefits. *Id.*

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)

---

[1] Plaintiff alleges that Giovanni Ramirez and Hayley Tyrell from Defendant's "Talent & Culture sub-division" informed him of the termination during a Zoom call in which they "were extremely rude and disrespectful." *See* Dkt. No. 2 at 4. At some point during the call, Plaintiff began "reading them Scriptures directly from the Bible" but "they muted [his] microphone on the Zoom call and proceeded to tell [him] that they were forcefully terminating [his] position[.]" *Id.*

3

(quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Thus, a "document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97,

4

106 (1976)).

B.     ADA Discrimination

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*[.]" *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  Under the *McDonnell Douglas* framework, "the survival of a complaint under Rule 12(b)(6) scrutiny in an employment discrimination case 'does not rest on whether it contains specific facts establishing a *prima facie* case.'" *Figueroa v. Rsquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (quoting *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011)).  "This is because, at the pleading stage, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for the discrimination claims." *Id.* (citing *Gonzalez v. Carestream Health, Inc.*, 520 Fed. Appx. 8, 9-10 (2d Cir. 2013)).  Instead, the court need only consider whether the complaint includes allegations sufficient to raise entitlement to relief beyond the speculative level. *See Gonzalez*, 520 Fed. Appx. at 10 (citing *Twombly*, 550 U.S. at 555).  "In other words, the [c]ourt asks only whether a plaintiff has pled a *prima facie* case, not whether a plaintiff has established that case." *Laface v. E. Suffolk BOCES*, 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018) (quoting *Figueroa*, 89 F. Supp. 3d at 489); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (noting that "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss"); *Dooley v. JetBlue Airways Corp.*, 363 Fed. Appx. 16, 21 (2d Cir. 2015) (applying pleading standard to ADA discrimination).  "Nevertheless, while a plaintiff need not allege specific facts establishing all the

elements of a *prima facie* case under *McDonnell Douglas*, these elements can still 'provide [a helpful] outline of what is necessary to render [a plaintiff's] claims for relief plausible.'" *Fanelli v. N.Y.*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014) (quoting *Sommersett v. City of N.Y.*, No. 09-CV-5916, 2011 WL 2565301, *5 (S.D.N.Y. Jun. 28, 2011) (alterations in original)).

A *prima facie* case of disability discrimination under the ADA requires that the plaintiff demonstrate that "(1) [his] employer is subject to the ADA; (2) [he] is disabled within the meaning of the ADA; (3) [he] is otherwise qualified to perform the essential functions of [his] job with or without accommodation; and (4) [he] suffered an adverse employment action because of [his] disability." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 127 (2d Cir. 2019) (quoting *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)).

Defendant argues that the complaint fails to "allege any facts regarding disability discrimination." Dkt. No. 13-1 at 10. Defendant states that "[t]he only facts even touching on an alleged disability relate to Plaintiff's inability to get a doctor to reassess his disability and fill out his medical certification for work." *Id.* Defendant further asserts that "Plaintiff fails to demonstrate how any major life activity has been sufficiently impacted by his unidentified condition to constitute a disability under the ADA." *Id.* at 11. Moreover, Defendant asks the Court to consider a July 27, 2022 email, purportedly from Plaintiff, regarding Defendant's requests to provide medical documentation. *See id.* at 7 n.2; Dkt. No. 13-2. Defendant asserts that it had a fear for "employees' safety" based on the email, which contains "violent and graphic" lyrics from "six songs by a heavy metal band called 'Behemoth'" that "threaten and portend death and bodily harm." Dkt. No. 13-1 at 7.

In response to the instant motion, Plaintiff filed a letter titled "Motion against any and all Dismissals," which contains scattershot references to, *inter alia*, the Bible, the Torah, Dante's

6

Divine Comedy, and apparent allusions to what Plaintiff describes as "My Poetry." Dkt. No. 17. While Plaintiff asserts that he opposes the motion, there are no discernable arguments or legal authorities in the letter. *See id.* However, the Court notes that Plaintiff previously submitted a letter to the Court in response to Defendant's initial request to file the motion at-hand. *See* Dkt. No. 10. In that letter, Plaintiff provided at least some coherent reasoning addressing Defendant's arguments. *See id.* In light of Plaintiff's *pro se* status, the Court will consider the contentions raised therein.

Plaintiff asserts that "there is [d]iscrimination going on here otherwise the EEOC wouldn't have given [him] a Formal Charge of Discrimination." Dkt. No. 10 at 1. Plaintiff asserts that he "is weak and ha[s] little strength." *Id.* He states that Defendant "also has paperwork on file about [his] 50% physical disability and [his] need to sit and stand" when needed. *Id.* Plaintiff states that he "was provided a special chair from VESID/ARISE for employment" with Defendant. *Id.* Furthermore, in pertinent part, Plaintiff asserts that:

> I had made [Defendant] aware that due to stress, social anxiety, etc. I need to take my break at the end of my shift. My employer had Sonya Bibbs harassing me telling me that I needed to take my break earlier in the shift and that they wouldn't honor my ADA accommodations for my break at the end of my shift that I had with them the entire time I was employed there; because I needed to refill out the ADA paperwork with a doctor. As well as I also stated that Giovanni Ramirez and Hayley Tyrell muted my microphone when I was reading Scriptures from the Holy Bible. I haven't been able to get a doctor's appointment because I don't wear a mask due to My Religious Beliefs. Which [Defendant] had given me an Indefinite Accommodation for not wearing a mask, because My Body is My Temple. That being said I need to Practice My Religious Beliefs. I also made this known in my complaint with Charge [sic] of Discrimination.

Dkt. No. 10 at 3.

Herein, after carefully reviewing the complaint and the parties' submissions, and mindful

that Plaintiff is acting *pro se*, the Court finds that Plaintiff has stated a plausible cause of action under the ADA.  While Plaintiff's complaint is far from a model of clarity, he plausibly alleges the minimal elements of an ADA claim:  that Defendant is subject to the ADA; that he is disabled within the meaning of the ADA because he cannot sit or stand (*i.e.*, major life activities) for prolonged periods; that he is otherwise qualified to perform the essential functions of a captioning assistant with an accommodation; and that he was terminated in connection with the disability.[2]  *See* Dkt. No. 2 at 6.

It should be noted that the arguments advanced in Defendant's brief are more appropriate for a Rule 56 summary judgment motion; not a Rule 12(b)(6) motion to dismiss.  The Court is not persuaded that the July 27, 2022 email is incorporated into the complaint as the "letter about My Religious beliefs" referenced by Plaintiff.  Dkt. No. 2 at 6; Dkt. No. 13-1 at 7 n.2.  While Defendant's concerns about this email may ultimately prove a legitimate non-discriminatory basis for the termination, and although the Court is highly skeptical as to the ultimate merits of Plaintiff's allegations, converting the instant Rule 12(b)(6) motion to dismiss to a Rule 56 summary judgment motion would be improper under the circumstances.

Accordingly, in deference to Plaintiff's *pro se* status, Defendant's motion to dismiss the ADA disability discrimination claim must be denied.

**C.    Title VII Religion Discrimination**

---

[2] The Court notes that Plaintiff affixed his EEOC charge of discrimination to the complaint, and thus the allegations contained therein are assumed as true for the purposes of this motion.  *See* Dkt. No. 2 at 6-7.  However, contrary to Plaintiff's belief, the existence of an EEOC charge of discrimination is not the equivalent of a plausibly alleged cause of action.  *See* Dkt. No. 10 at 1.  The charge of discrimination is an administrative agency notification that a claimant (*i.e.*, Plaintiff) believes that a respondent (*i.e.*, Defendant) committed an unlawful act of discrimination. *See E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 67-68 (1984) (discussing the general functions of an employment discrimination charge).

Under Title VII, "[i]t is unlawful for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's . . . religion[.]" *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771-72 (2015) (quoting 42 U.S.C. §§ 2000e-2(a), 2000e(j)). "The term 'religion' includes all aspects of religious observance and practice, as well as belief," and employers must "reasonably accommodate . . . an employee's religious observance or practice" absent an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("according to this definition, when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship").

A Title VII plaintiff alleging employment discrimination must make a showing "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Title VII employment claims are "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Id.* at 312; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, at initial pleading stage, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

Defendant asserts that "Plaintiff fails to provide any specific instances of discrimination he sustained because of his religious beliefs and how such discrimination related to any adverse employment action." Dkt. No. 13-1 at 10. Defendant asserts that Plaintiff has "fail[ed] to create

9

an inference of discrimination based on his religious beliefs" and thus he has "fail[ed] to state a claim for discrimination under Title VII." *Id.* And, as addressed previously, Plaintiff cites the July 27, 2022 email, purportedly from Plaintiff, as a legitimate non-discriminatory basis for terminating Plaintiff's employment. *See id.* at 7.

Herein, Plaintiff has alleged that he is a member of a protected class; that he was qualified to work as a captioning assistant; and that he was terminated under circumstances *minimally* suggestive of discrimination. As addressed previously, the Court will not convert the instant motion to one seeking summary judgment because, in viewing the matter most favorably to Plaintiff, the complaint alleges that Defendant knew about Plaintiff's religious beliefs "the entire time [he] was employed" and that Plaintiff's "religious objections" plausibly factored into his termination. Dkt. No. 2 at 3, 6. The Court notes again that the alleged email from Plaintiff may ultimately prove to be a legitimate non-discriminatory basis for the termination. But Plaintiff is not required to prove his case at this early stage.[3] *See Littlejohn*, 795 F.3d at 311.

As such, Defendant's motion to dismiss Plaintiff's Title VII religion discrimination claim must be denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 13) is **DENIED**; and the Court further

---

[3] As a final note, Plaintiff is hereby directed to cease from filing further "poetry," song lyrics, biblical citations, and any similar cultural references, unless it is material to resolving a specific issue. As an example, Dkt. No. 17 overwhelmingly contains such references that have no bearing on the issues before the Court. Plaintiff is warned that the failure to comply with this order may result in sanctions, including dismissal of the instant action with prejudice.

**ORDERS** that Plaintiff cease from filing any further poetry, song lyrics, biblical citations, and other similar cultural references unless it is material to resolving a specific issue before the Court; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 24, 2023
       Albany, New York

Mae A. D'Agostino
U.S. District Judge